IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:13-cr-00224-AA |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| TROY LEE WOOLEY, | |
| Defendant. | |

AIKEN, District Judge:

Now before the Court is defendant Troy Wooley's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (doc. 54). Defendant seeks compassionate release, asserting that his Chronic Obstructive Pulmonary Disorder ("COPD") and asthma place him at high risk of severe illness and complications from the 2019 novel Coronavirus ("COVID-19"). The Government opposes his motion. For the following reasons, defendant's motion is DENIED.

//

Page 1 – OPINION AND ORDER

## STANDARDS

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see *Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) provides an exception in rare cases. Section 3582(c)(1)(A) authorizes a court to modify a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the court must consider "the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" *Id*.

The relevant policy statement for sentence reductions under the compassionate release statute is found in the U.S. Sentencing Guidelines, § 1B1.13. The policy statement identifies several "extraordinary and compelling reasons," U.S.S.G. § 1B1.13(1)(A) & cmt. 1, requires a finding that the defendant does not pose a danger to others or the community under the factors provided in 18 U.S.C. § 3142(g), *id*. § 1B1.13(2), and observes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in [§ 3553(a)] and the criterial set forth in this policy statement, such as . . . whether the defendant is a danger," *id*. § 1B1.13 cmt. 4.

Until 2018, § 3582 allowed compassionate release only upon a motion by the Bureau of Prisons ("BOP"). The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant compassionate release

motions filed by defendants where the defendant had petitioned BOP to bring a motion on the defendant's behalf and either the defendant had exhausted all administrative appeals after a denial or thirty days had elapsed since the Warden of the defendant's facility received the request.

## DISCUSSION

On September 8, 2015, the Court sentenced defendant to 120 months' imprisonment, with a lifetime term of supervised release, following defendant's guilty plea to one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Since then, defendant has been serving his sentence at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). Defendant's projected release date is November 30, 2020, and BOP has approved him for transfer to community corrections on June 4, 2020. Defendant made institutional requests for both accelerated home confinement and compassionate release on April 4, 2020. He filed this motion on April 22, 2020. The Court heard oral argument on the matter on May 12, 2020.

Defendant's motion is properly before the Court because thirty days have elapsed since the date of his request to the Warden.[1] Defendant asks the Court to reduce his sentence to time served. He asserts that his age, respiratory conditions, proximity to his release date, and record while in custody provide extraordinary and compelling reasons for immediate release. The government opposes release, arguing that defendant's dangerousness outweighs those circumstances and that

---

[1] The government's Response (doc. 57) noted that BOP does not have a record of Wooley's requests but stated that the government would rely on defense counsel's assertion. Resp. at 2.

transitioning defendant through community corrections is the best way to ensure the community's safety.

Defendant is 52 years old. He was diagnosed with COPD and asthma after sentencing and regularly uses an inhaler to treat his asthma. The Centers for Disease Control and Prevention ("CDC") has identified chronic lung disease and moderate to severe asthma among the underlying medical conditions that place people of any age at high risk of severe illness from COVID-19. *See* CDC, Information for Healthcare Professionals: COVID-19 and Underlying Conditions (Apr. 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html. On top of that, incarcerated people are particularly vulnerable to infection. CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (outlining how correctional and detention facilities present "unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors").

FCI Lompoc is "among the worst coronavirus hotspots in the nation." *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020). On May 12, 2020, the date of the hearing on this motion, BOP reported 891 positive cases at FCI Lompoc out of an inmate population of 1,162. The day before, the Court learned that defendant was among those who had tested positive for the virus. At the hearing, defendant reported that he had been tested on May 4, 2020.

He also reported that he had experienced about two days of breathing difficulties. During that time, medical staff tested his oxygen levels, which had remained normal. By the hearing, defendant had been symptom-free for five days.

Several courts have recognized that COPD and asthma combined with the threat of COVID-19 infection can provide a basis for compassionate release. *See United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (finding extraordinary and compelling reasons where defendant was "65 years old [and] suffers from COPD, asthma, and other lung-related ailments" and collecting cases). And courts, including this Court, have also found extraordinary and compelling reasons for compassionate release where a defendant is individually at high risk from severe illness from COVID-19, incarcerated at an institution with an outbreak of the virus, and has contracted the virus. *See United States v. Barber*, No. 6:18-cr-00446-AA, 2020 WL 2404679, at *5 (D. Or. May 12, 2020); *United States v. Connell*, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).

Despite the presence of similar circumstances here, the Court cannot grant defendant's compassionate release motion at this time because the Court finds that defendant would pose a danger to others or the community if released. Defendant has a long history of convictions and uncharged conduct that involved abuse of children and substance abuse. Based on that history, the Court's 2015 judgment recommended several facilities to BOP "so the defendant can participate in the Sex Offender treatment program as well as RDAP [(the Residential Drug Abuse

Program)] at the same facility." J. & Commitment (doc. 45) at 2. The Court also imposed special conditions of supervision that require defendant to "participate in a sex offender treatment assessment and treatment program" while on supervised release. *Id.* at 3. Defendant has completed the in-custody portion of RDAP while at FCI Lompoc, has already been in touch with a potential treatment provider for the community-based portion, and reports that he is more than eight years clean.

But defendant has not had an opportunity to receive sex offender treatment while in custody. Without adequate supervision and treatment, the Court finds that defendant remains a danger to the community and, particularly, to children. Defendant proposes release to his mother's home in Toledo, Oregon, which is in Lincoln County, where defendant spent most of his life and committed all his prior offenses. At the hearing, the U.S. Probation Office reported that the sex offender treatment provider who has served their clients in Lincoln County recently retired. Probation has not yet been able to coordinate with a new counseling service. Once a provider is arranged, defendant will need to use a device that can access the internet to participate in substance abuse and sex offender treatment. That circumstance combined with defendant's lack of sex offender treatment while in custody and the Probation Office's limited ability to provide supervision at this time presents a high risk that defendant will reoffend.

By contrast, at the Residential Reentry Center ("RRC") in Eugene, Oregon, where defendant would likely be placed upon transfer to community corrections, defendant would receive intense supervision in a structured environment and could

be closely monitored if he needed to use electronic devices. The RRC also has a long-standing relationship with a local sex offender treatment provider. Accordingly, the Court agrees with the government that, at this time, defendant has failed to show that he is not a danger to the community pursuant to the factors provided under 18 U.S.C. § 3142(g) and that transitioning defendant to community corrections to complete his sentence is the best way to ensure the safety of the community and his success on upon release from custody.

Defendant's infection has been largely asymptomatic to this point, and FCI Lompoc appears equipped to monitor his condition to ensure that defendant (1) receives adequate care should he develop severe symptoms and (2) can maintain his June 4, 2020 transition date to the RRC. Today, defendant will complete the 10-day isolation period recommended by the CDC and will be eligible for re-testing under the BOP's policy. The Probation Office reports that the Portland and Eugene RRCs will accept someone who has tested positive for COVID-19 fourteen days after that person tests negative. The Court urges BOP to consider accelerated placement with the RRC if defendant's next COVID-19 test comes back negative.

But the Court recognizes that defendant's situation may change and that certain changes may mitigate defendant's dangerousness and present extraordinary and compelling circumstances. The Court will schedule a status conference next week to receive updates about defendant's condition and BOP's transfer plans. Because circumstances may change rapidly, the Court encourages defendant and the

government to contact the Court as soon as possible if defendant's condition deteriorates or BOP's plans change before then.

## CONCLUSION

Defendant's Motion (doc. 54) is DENIED.

IT IS SO ORDERED.

Dated this <u>14th</u> day of May 2020.

                                /s/Ann Aiken

                                Ann Aiken
                      United States District Judge